(23 Misc. Rep. 130.)

### BANNON v. LEVY et al.

(Supreme Court, Appellate Term. March 28, 1898.)

APPEAL—REVIEW—CONFLICTING EVIDENCE.

In an action to recover for goods sold and delivered, the whole case turned on a sharply-disputed question of fact as to whether, on the one hand, defendants' agent ordered certain goods in February, 1895, to be delivered after May 1st, or, on the other hand, in January, 1895, ordered only certain samples, to be delivered within two weeks. *Held*, upon a review of the evidence, that the finding of the justice in defendants' favor should not be disturbed.

Appeal from Twelfth district court.

Action by John F. Bannon against Sigmund Levy and Solomon Levy. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Fromme Bros., for appellant.
Hayman & Rosenthal, for respondents.

GILDERSLEEVE, J. This action was brought to recover for goods sold and delivered. The answer is a general denial. On a former trial the complaint was dismissed, and an appeal was taken to this court, where the judgment was reversed, and a new trial ordered. 20 Misc. Rep. 581, 46 N. Y. Supp. 353. Another trial was had, where the complaint was again dismissed, and the case again comes before this court on appeal.

The only witnesses called for plaintiff were his assignor, Gribbie, and the employé of said assignor, Demorest; while the defendants produced only one witness, Simon Levy, the father of the defendants. At the beginning of the trial, he is referred to, in the stenographer's minutes, as Sigmund Levy, which is evidently a clerical error. The evidence shows that this Simon, on behalf of defendants, entered into negotiations with plaintiff's assignor, Gribbie, in January or February, 1895; but whether it was for the sale of goods, or merely of samples, is a disputed question in the case. It appears from the evidence that the goods were made and delivered by plaintiff's assignor to defendants on or about May 25, 1895, but were forthwith returned by defendants. It also appears that, some time previous to this transaction, Simon had ordered goods, on behalf of defendants, from Gribbie, and had paid for them with checks signed by defendants, which appellant claims as a fact tending to justify Gribbie in regarding Simon as the agent of defendants in the transactions which gave rise to this action. Simon swears that he had no authority to order goods, but could only order samples from which defendants selected the goods. It does not appear, however, that Gribbie had any notice of this limitation in Simon's agency. Gribbie swears that Simon, in the latter part of February, 1895, gave him an order for three numbers of inks, one gross at $60, one at $31.25, and one at $28.12, which were to be delivered after the 1st of May, 1895. These goods were, in fact, as we have said, delivered to defendants on or about May 25, 1895. Gribbie also swears that he only made goods to order. Simon himself was called to the stand by plaintiff, and examined as follows:

"Q. Did you testify on the former trial that you bought goods for them (defendants) and sold goods for them, and gave orders? Did you testify, 'I did almost anything,—sold goods and ordered goods'? A. Ordered goods; yes, sir. Q. Was that true? A. I ordered goods for them. Q. That was true? A. After I had samples. Q. You ordered goods for them? A. I ordered goods after we had samples. I bought samples of different manufacturers in this line of goods; and, after my boys sold some goods on those samples, then we ordered just the quantities that they have sold. Q. You never ordered any goods otherwise? A. No, sir."

When called as a witness for his sons, the defendants, Simon swears that he called on Gribbie in January, 1895, and gave him an order to send to defendants samples of certain lines of goods.

"Q. Just state why you merely ordered the samples? A. Because that is the only way my boys do business, as they have only a desk-room office. Q. When were those samples to be sent to your place? A. They were to be sent to our place after two weeks. They were to be sent two weeks after I was there, in January. Q. You say in January,—about when? A. Maybe between the 20th and 25th."

He swears the goods were not sent in two weeks, and that in the commencement of February, 1895, Gribbie called at the defendants' office, and had an interview with Simon and one of the defendants.

"Q. This conversation took place. you say, about February? A. Yes. Q. And he (Gribbie) came there, and asked for more time (in which to deliver the samples)? A. Yes, sir. Q. And your son (one of the defendants) gave him more time? A. Yes, sir. Oh! a couple of weeks longer."

He further swears that the goods did not come; and in the month of March, 1895, all orders were canceled; and defendants had nothing more to do with Gribbie until the goods arrived, in May, when they were returned.

"Q. In May some cases came? A. Yes, sir. Q. Do you know what was inside of those cases? A. No, sir. They were not opened. They were returned by the U. S. Express. Q. And you returned them because it was too late to use the samples? Your men had already gone on the road? A. Yes, sir. Q. Now, I believe you testified that all you ordered were samples? A. Yes; nothing else. Q. That is all you were told to order? A. Yes."

Although Simon swears so positively that all orders were canceled in March, 1895, and that defendants and he had nothing more to do with Gribbie after that until the goods were returned, on or about May 25th, it appears that on May 6, 1895, he, on behalf of defendants, wrote as follows to Gribbie:

"If convenient, by Friday next, the 10th, send us ¼ of a dozen each of the samples selected by us. and also all other goods you are making, including whisk & holder, toilet sets, &c., as we need three sets of samples; and, if you make the prices right, you may expect large orders very shortly. Please enclose invoice with samples, and oblige.
"Resp.                                                    Levy Bros."

Also, on May 24, 1895, he writes Gribbie, for defendants, as follows:

"Mr. L. wishes to see you as soon as possible.
"Yours, resp.,                    Levy Brothers, 86 Bond Street, N. Y., L."

On this subject he is examined as follows:

"Q. The goods they testified they sold Levy Brothers came to your place, you say, the day before you sent them back? A. Yes. Q. You sent them back on May 25th. So the goods came on May 24th, didn't they? A. No; I suppose the 23rd. Q. That is the time you wrote this letter that you wanted to see him? A. Yes. Q. He has claimed that you ordered from him inkstands and buckles, didn't you? A. They were among the samples that I ordered. Q. This letter merely refers to whisk & holder, and other things? A. Yes, sir. Q. And does not have anything to do with these samples? A. No. Q. You would usually use two or three samples, and a quarter of a dozen is three? A. Yes, sir. Q. You were willing to take the samples ordered, if they were delivered in time? A. Yes, sir; if we could get them. Q. They were ordered in January, and on May 23d they came? A. Yes, sir. Q. Or at least some packages came? A. Yes, sir. Q. by Mr. Fromme: But you are sure you canceled all orders in March?. A. Yes, sir. Q. Are you sure of the dates when they were canceled? A. No. Q. These goods were to be delivered within two weeks after you ordered them? A. Yes, sir."

The plaintiff's witness Demorest corroborates to some extent Gribbie. He swears he was present part of the time during the conversation between Simon and Gribbie. He says:

"When I brought in the samples. Mr. Levy thought it was very nice; but the other subjects of conversation I have no recollection of, except what interested

me. and that was when he was ordering goods. Of course, that I heard. I heard all of it; but I don't remember it, because I had no use to remember any of the goods, except the orders."

He admits that he is still in the employ of Gribbie, and has been for six or seven years. On cross-examination he swears:

"Q. But in the Levy case Mr. Gribbie had the customer, didn't he? A. Yes; then he always takes the order. Q. All you did was to walk in and out? A. That is all. Q. You were out of the room for some time? A. I was not in the room when he first came. Q. You don't know what conversation Levy had with Mr. Gribbie when you were not there? A. No. Q. And what these men said while you were out to complete the sample you don't know? A. No."

When again called to the stand, Simon Levy swears positively that Demorest was not present when he gave the order to Gribbie.

It will be seen, therefore, that the whole case turns upon a sharply-disputed question of fact, viz.: Did Simon Levy, in February, 1895, order three gross of inkstands, to be delivered after the 1st of May, 1895, as claimed by plaintiff; or did he, in January, 1895, order only samples, to be delivered within two weeks, which time was subsequently, in February, extended two weeks, as claimed by defendants? The letter of May 6, 1895, while apparently contradicting Simon's testimony that he had nothing more to do with plaintiff, after canceling all orders in March, 1895, can hardly be said to have any bearing on plaintiff's claim to recover; for plaintiff's claim is founded upon an alleged sale, in February, 1895, of three gross of inkstands, while the letter asks Gribbie to send to defendants, by the 10th of May, 1895, "$\frac{1}{4}$ of a dozen each of the samples selected by us, and also all other goods you are making, including whisk & holder, toilet sets, &c., as we need three sets of samples; and, if you make the prices right, you may expect large orders very shortly," etc. But, be this as it may, the learned trial justice has found, upon this sharp conflict of evidence, in favor of the defendants; and we do not feel warranted in interfering with this finding. It is true that defendants' letter of May 25th, referring to the return of an invoice of goods, does not assign, as their reason, plaintiff's failure to deliver the samples within the two weeks, referred to, as the reason for the return, by Simon; but the letter states that the goods are returned "because all we wanted were samples of all your fancy goods, on which we could place orders by and by. But it seems you do not want to understand it that way. Besides, we find the prices on your goods more suitable for the direct retail or drug trade, and therefore decline to handle your goods in our line." It would seem from the wording of this letter that it, like the one of May 6th, referred to some other transaction than that of the alleged sale, in February, of three gross of inkstands, as claimed by plaintiff. Simon was not interrogated with regard to this letter, but he does swear, as we have already seen, that the letter of the 6th of May had nothing to do with the transaction that forms the basis of this action. It will be remembered that the goods were returned unopened by the defendants. This letter of May 25th, although attached to the record of an exhibit in the case, does not appear from the stenographer's minutes to have been introduced in evidence. But we refer to it for what it may be worth.

After a careful examination of the evidence in this case, and of the objections and exceptions taken by plaintiff in the course of the trial, we come to the conclusion that the judgment, so far as assailed on this appeal, should be affirmed, with costs. All concur.